CHARLES F. FISHER, *Appellant*, v. M. P. MILLER, AYMER V. LAUGHNER, AND STELLA LAUGHNER, HIS WIFE, *Appellees*.

Division A.

Opinion Filed June 29, 1926.

1.  Cne purchasing property with notice that the grantor had contracted to convey to another may be compelled to perform the contract in the same manner and to the same extent as the grantor would have been liable to do had he not transferred the legal title.

2.  Where a married man enters into a contract for the sale and conveyance of real estate, not homestead property, the wife not joining therein, and the vendee enters into the contract in ignorance that the vendor was married and believing that the vendor could give an unincumbered title, such vendee can obtain in equity specific performance by the vendor of the contract with an abatement from the purchase price of the present worth or value of the inchoate right of dower vested in such vendor's wife.

3.  If a vendee enters into a contract, in which the vendor's wife does not join, for the purchase of real estate, not a homestead, the vendee knowing the vendor to be a married man, and hence knowing that his wife is entitled to dower, which right she cannot be compelled to release, and the wife, without the husband's inducement or procurement, refuses to join in the husband's deed to the

vendee, such vendee can only obtain specific performance of the contract to the extent of the vendor husband's interest or title, without any abatement or compensation to cover the outstanding dower interest of the wife.

An Appeal from Circuit Court for Pinel'as County, Florida; M. A. McMullen, Judge.

*Hilton S. Hampton,* for Appellant;

*Harris & Denning* and *Cook & Harris,* for Appellees.

### STATEMENT.

This was a bill for specific performance of contract for the conveyance of land, brought by the vendee, Charles F. Fisher, against the vendor, M. P. Miller, and two subsequent vendees, Laughner and wife, who are alleged to have purchased the property with notice of the complainant's contract rights and to hold the legal title in trust for complainant.

The bill alleges that at the time the contract to convey was made, Miller was the owner in fee simple of the property described in the bill; which contract was in writing, signed by him, setting forth the price, terms of payment and description of the land sold, and that Two Hundred Dollars was paid at the time of the execution of the contract by the purchaser, and that this contract was assigned by the original purchaser to the complainant. That after receiving a portion of the purchase price and letting the complainant into possession of the property, Miller discovered that he could sell the land for a larger sum and thereupon tendered the complainant, at various times, large sums of money to be released from said agreement, which offers were declined, owing to the fact that complainant very much desired the property for residential purposes,

having found no other property in the vicinity of said land which would be suitable for complainant's purposes, and that complainant, when declining to accept said offer and release Miller, expressed his willingness and ability to carry out and perform the agreement of purchase according to its true tenor and effect, but that Miller refused the tender, which complainant avers he is still able, ready and willing to perform, and to make all payments required of him by the contract.

That thereafter the defendant Miller sold and conveyed the property to Aymer V. Laughner, who made the purchase and took the conveyance with full knowledge of complainant's rights in and to the land as against the defendant Miller, and that Miller made the conveyance with the intent to divest himself of the legal title to the land in order to prevent his being required to convey the land to complainant.

That as there is no other land in the vicinity as well suited to complainant's purpose as this land, he cannot be adequately compensated in damages, and that the defendants, Laughner and wife, having taken conveyance with full knowledge of complainant's rights, should be decreed to hold the legal title to the same in trust for complainant, he being ready and willing, and offering in the bill to make such payment, on the purchase price to the defendant Miller, or to the defendant Laughner, as the court may find he is entitled to receive.

The prayer of the bill is that defendant Miller be decreed to specifically perform his agreement under such terms and conditions as the court may direct, and to make and deliver to complainant a good and sufficient deed of conveyance of the property, complainant offering to perform all the terms and condition of the contract on his part, and that the defendants Laughner and wife be decreed to have received no right, title or interest adverse or paramount to the right

of complainant by virtue of the deed made to them, and that said deed and any right or title thereunder asserted by them, may be decreed to be subordinate and inferior to the right of the complainant to specific performance, and that their said deed and all right thereunder be cancelled as a cloud upon complainant's title, and that they be decreed to hold in trust for complainant and required to reconvey whatever right, title or interest they may have acquired by such conveyance, or in default of such conveyance by them that the decree operate as a conveyance thereof.

There is also a general prayer for such relief in the premises as may be agreeable to equity and as the circumstances of the case shall warrant.

No demurrer was filed to the bill, but a plea joined in by all the defendants, was filed, which alleged that at the time of the execution of the contract and at all times thereafter, the said M. P. Miller was and is a married man, the lawful husband of Addie Miller, and that at the time of the execution of such contract "under and by virtue of the marital relations then existing between the defendant, M. P. Miller, and the said Addie Miller, she, the said Addie Miller, wife of defendant, M. P. Miller, had right of dower in the land described in the bill of complainant, and the said defendant, M. P. Miller, was on the fifth day of October and has at all times since been unable to make complete conveyance of such tract of land without having the said Addie Miller, his wife, join therein''; and further alleges that the agent of the original purchaser, complainant's assignor, and thereafter the agent of the complainant, had at the time of the execution of the contract knowledge of the fact that the defendant was a married man, in that said agent was and is well and intimately acquainted with the said Miller.

This plea was sustained by the court, and from the order sustaining said plea, this appeal was taken.

BROWN, C. J. (After stating the facts):

It will be observed that the plea does not allege that Mrs. Miller, wife of the defendant, refused to join in the execution of the conveyance to the complainant; it merely alleges that the defendant Miller had been and was unable to make complete conveyance of the land without having his wife join therein. Nor does the plea allege that the property involved was the homestead of the vendor; so the question of what would have been the effect if the property were a homestead, is not before us.

The bill does not allege that Mrs. Miller joined in the deed made by her husband to the second vendee, Laughner, and she is not made a party defendant to the bill. Nor does it appear that she was a necessary or proper party, it not being alleged that she had joined in the contract sought to be enforced, or in the deed to the second vendee. Taylor v. Matthews, 53 Fla. 776, 44 So. 146.

The doctrine laid down in the first headnote of the case of Hannan v. Holz, 84 Fla. 1, 92 So. 874, applies in this case in so far as the right and title of Miller conveyed by him to Laughner and wife, is concerned. This headnote follows the language of the opinion and reads as follows: ''One purchasing property with notice that the grantor had contracted to convey to another may be compelled to perform the contract in the same manner and to the same extent as the grantor would have been liable to do, had he not transferred the legal title.'' This follows the rule announced in Drake v. Brady, 57 Fla. 393, 48 So. 978, 17 Ann. Cas. 1035; Drake Lumber Co. v. Branning, 66 Fla. 543, 64 So. 263. See also Pomeroy Spec. Perf. Sec. 465.

It is contended by appellee that this doctrine does not apply here, because the contract with the first vendee, of

which the second vendees had notice, was not such a contract as could be specifically enforced in equity on account of the failure of the vendor's wife to joint in the contract, and that, therefore, such second vendees took title with notice of an unenforcible contract, for the violation of which the vendor could only be sued personally for damages for breach thereof, and which would not affect the title to the property nor the right to convey the same. This contention is based upon the proposition, boldly asserted and ably argued in behalf of appellees, that specific performance does not lie against a married man as to a contract for the sale and conveyance of land where the wife did not join in the execution of the contract, especially when the purchaser knew at the time of the purchase that the vendor was married, and that therefore the plea, setting up that at the time of the making of the contract the defendant Miller was a married man and unable to make a complete conveyance of the land without his wife joining therein, and that complainant was chargeable with notice of these facts, is a sufficient defense, although said plea fails to allege that the wife had in fact refused to join in the execution of the deed as required by the contract.

In support of this proposition, appellees cite the case of Murphy v. Hohne, 73 Fla. 803, 74 So. 973. In the opinion in that case, it is said: ''And the complainant below has no right to enforce specific performance against the wife, and as when the contract was made the complainant, not knowing the defendant was a married man; contemplated a conveyance by the defendant of the entire property right in the land, which could not have been contracted for if contemplated by the defendant, he knowing he had a wife and no contract by her being made as required by the statute, the court will not require specific performance in part and compensation for the remainder, that relief not

appearing in this case to be essential to the maintenance of the legal rights of the complainant growing out of the contract as it was accepted by him. It does not clearly appear that appropriate proceedings at law will not afford a complete remedy." And in the opinion on motion for rehearing, the following appears: "The allegations of the complainant clearly show that in accepting the contract to convey he did not contemplate the existence of or the conveyance of a dower interest in the land; and though the complainant may have been deceived as to the defendant's right to convey the land, this does not afford an equity for specific performance. Deception may give a right of action at law or in equity for appropriate relief; but specific performance is not a general remedy for deception, and the allegations in this case do not show a clear right to enforce in part a contract to convey land."

In the instant case, specific performance against the wife is not prayed for, nor does the bill allege that the purchaser did not know the vendor was married at the time the contract was made. *Per contra*, this fact was known to the purchaser, as is specifically alleged in the plea. Nor does it appear in the instant case that any deception was practiced with reference to the marital status of the vendor or the existence of a dower right in the land. The case of Murphy v. Hohne nowhere lays down the broad proposition contended for by appellees, to the effect that a contract for the sale and conveyance of land made by a vendor who was a married man, not joined in by the wife, will not be enforced in equity, as against such vendor, in so far as *his* right and title in the property are concerned.

For aught that appears in the plea, the wife in this case would have joined in the execution of the deed to the purchaser if she had been requested by her husband to do so. Even if the contract set up in the bill be construed to call

for conveyance of complete title to the property, the plea does not show that there had been actual inability on the part of the defendant Miller to secure his wife's joinder in the execution of the deed. So the plea does not constitute a sufficient defense to the bill, unless the appellees' contention, that the husband's contract was unenforcible *ab initic* by specific performance, merely because the wife had not joined therein, be admitted.

Manifestly, in such a case, specific performance does not lie as against the wife. She cannot be required by the courts to divest herself of her dower where she had made no contractual obligation to that end, executed with the formalities required by our statute. Sec. 3803 Rev. G. Stat.

In the case of Knox v. Spratt, 23 Fla. 64, 6 So. 924, this court recognized the general rule to be that in case the vendor is unable to comply with the contract by reason of not having the legal title to all the land sold, yet the vendee is entitled to specific performance of the contract for such as lies in the power of the vendor to convey, with compensation for the residue, and the court quoted with approval the old rule, "that in equity the purchaser, though he cannot have a partial interest forced upon him, yet if he entered into the contract in ignorance of the vendor's incapacity to give him the whole he has a right to insist that the vendor shall convey to him so much as is in his power to do." But the court held in that case that inasmuch as complainant's bill admitted that notice was given at the time of the sale that there was a deficit in the claim of title, the complainant was not entitled to specific performance of part of the contract with compensation for residue as prayed for in the bill.

In the opinion in the case of Rose v. Henderson, 63 Fla. 564, on pages 590 and 591, it was said: "There is scarcely any conflict of authority upon the

proposition that if one persoon contracts to sell a parcel or tract of land representing himself as the owner of the whole and the vendee is not informed as to his interest and it turns out that he does not own the title to all he contracted to sell, a court of equity will not permit him to decline to convey what he owns, but at the instance of the vendee will compel him to perform his contract so far as he can do so, with an abatement of the purchase price. Most of the authorities cited by appellees are of that kind. Lord Eldon, in Mortlock v. Buller, 10 Ves. Jr., 292, text 315, thus stated this rule: 'If a man, having partial interests in an estate, chooses to enter into a contract, representing it, and agreeing to sell it, as his own, it is not competent to him afterwards to say, though he has valuable interests, he has not the entirety; and therefore the purchaser shall not have the benefit of his contract. For the purpose of this jurisdiction, the person contracting under those circumstances, is bound by the assertion in his contract; and, if the vendee chooses to take as much as he can have, he has a right to that; and to an abatement; and the court will not hear the objection by the vendor, that the purchaser cannot have the whole.' See note to Eppstein v. Kukn, (225 Ill. 115, 80 N. E. Rep. 80) 10 L. R. A. (N. S.) 117; Castle v. Wilkinson, L. R. 5 Chan. App. Cas. 534. See Price v. Griffith, 1 De Gex M. & G. 80, for some qualification of this rule. Also Knox v. Spratt, *supra.*"

This question has been very carefully considered by the erudite author of the recently published third edition of Pomeroy's Specific Performance, wherein the cases are cited and reviewed. As the author's reasoning and conclusions on these questions are, in our opinion, lucid and sound, we quote therefrom sections 460 and 461, inclusive:

"460. *When the wife of vendor has an inchoate dower right, and refuses to join in the deed.*

."The third case, where the wife of the vendor has an inchoate right of dower in the land which he agrees to sell, is the one which is constantly arising in this country. It seems to be settled in some of the states as a general rule, whether the vendee knew of the wife's dower interest or not, that when a contract is made with the husband, and the wife refuses to release her dower, the vendee cannot have an abatement from the price if he obtains a specific performance; he must either abandon the contract, or obtain a conveyance of the husband's estate, and sue him at law for a breach of the contract, or else content himself with the legal remedy alone. The reasoning quoted in the note, by which this rule is supported, is certainly very unsatisfactory, and the argument by which a judge sitting in equity justifies a party in the breach of his contract, and throws the shield of his decision over the defaulting party alone, is in striking contrast with the utterances of those equity judges who have built up the system and developed its doctrines from the eternal principles of right and justice. In fact, all the grounds given by the learned judge against awarding compensation are utterly untenable. The argument that the court cannot make a new contract for the parties, would apply with exactly the same force to every case in which an abatement from the price is decreed; and, notwithstanding his *assertion,* it is plain, upon the slightest examination, that the case is identical in principle and in its particulars with all those instances of partial failure or defect of title in which compensation is always given to the vendee. The particular difficulty in the way of ascertaining compensation alleged by the judge, is shown to be not difficult at all by two distinct considerations: *First,* if the husband himself had procured his wife to refuse, for the purpose of defeating the contract, then, as will be seen in the following paragraphs, a specific per-

formance, with compensation, will be decreed; but on the reasoning of the court, this could not be done, since the difficulty of fixing upon the amount of the abatement is just as great in the one case as in the other—the contingency existing in the latter instance as well as in the former. But, *secondly*—and this answer is overwhelmingly conclusive—it is conceded by the court that the vendee can sue at law and recover damages against the vendor for the breach of the contract. Now, in the action at law *the damages must be assessed upon exactly the same basis as that upon which the abatement of the price would be ascertained in equity*—if not, the assessment would be mere conjecture. If the damages can be assessed at law, notwithstanding the contingency, then, upon the same principle, and with the same ease, the compensation can be ascertained in equity. A party is dismissed from a court of equity because the relief which he asks is said to be impossible; he goes to a court of law and obtains the very same relief, on the very same facts, and in the very same manner in which he asked to have it granted in equity. In truth, a court of equity, in awarding compenstation, does not necesarily require that the basis upon which the amount is ascertained should give a result with absolute accuracy; it is enough if the result can be fixed with reasonable certainty. Now, by the aid of the life tables, disclosing the probable life of the wife, the present value of her dower càn be ascertained with perfect ease upon the supposition that she will survive her husband; and even if this should possibly be a little too large, the husband, who has entered into a contract which he cannot fulfill, is in no position to demand favor from the court, especially as the money will only be withheld for a time by the vendee, and will be paid at the expiration of the dower right by death of the wife, whether she die before or after her husband.

"461. *Knowledge of the vendee.* The true *principle* is that laid down in the English cases heretofore quoted. If the vendee knows that the vendor is a married man, he knows that his wife is entitled to dower, and that she cannot be compelled to release her dower right, and entering into the contract with such knowledge, he is not entitled, within the doctrine as well established, to ask anything more than the husband himself can give. It is the vendee's knowledge, and not any notion of making a new contract for the parties, which prevents the purchaser from obtaining compensation. On the other hand, if the vendee entered into the contract in ignorance that the vendor was married and under the supposition that the vendor could give an unincumbered title, then he ought to have a specific performance with an abatement from the price."

Some of the cases supporting the above propositions are: Herschman v. Forehand, 114 Ark. 436; 170 S. W. 98; Osborne v. Fairley, 318 Ark. 433, 211 S. W. 917; Martin v. Merritt, 57 Ind. 34, 26 Am. Rep. 45; Leach v. Forney, 21 Iowa 271, 89 Am. Dec. 574; Thompson v. Colby, 127 Iowa 234, 103 N. W. 117; Noecker v. Wallingford, 133 Iowa 605, 111 N. W. 37; Williams v. Wessels, 94 Kan. 71, 145 Pac. 856; Melamed v. Donabedian, 238 Mass. 133, 130 N. E. 110; Walker v. Kelly, 91 Mich. 212, 51 N. W. 934; Sanborn v. Nocking, 20 Minn. 178; Scheerer v. Scheerer, 287 Mo. 92, 229 S. W. 192; Tebeau v. Ridge, 261 Mo. 547, 170 S. W. 871, L. R. A. 1915C 367; Luczak v. Mariove, 92 N. J. Eq. 377, 112 Atl. 494; Binns v. Smith, 93 N. J. Eq. 33, 115 Atl. 69; Bostwick v. Beach, 103 N. Y. 414, 9 N. E. 41 (dictum); Bethell v. McKinney, 164 N. C. 71, 80 S. E. 162; Payne v. Melton, 69 S. C. 370, 48 S. E. 277; Wanamaker v. Brown, 77 S. C. 64, 57 S. E. 665; Wright v. Young, 6 Wis. 127; 70 Am. Dec. 453; O'Malley v. Miller, 148 Wis. 393, 134 N. W. 840; Stone v. Stanley, 92 N. J. Eq. 310, 112 Atl. 496; Far-

thing v. Rochelle, 131 N. C. 563, 43 S. E. 1; Elwood v. Smith, 95 N. J. Eq. 195, 122 Atl. 889; People's Sv. Bank v. Parisette, 68 Ohio St. 450, 67 N. E. 896, 96 Am. St. Rep. 672; Kuratli v. Jackson, 60 Ore. 203, 118 Pac. 192, 1013 Ann. Cas. 1914A, 203, 38 L. R. A. (N. S.) 1195. The rule in Alabama is that specific performance is allowable, but that indemnity, rather than compensation or abatement of price, should be provided. Minge v. Green, 176 Ala. 343, 58 So. 381; Parsons v. Linza, 204 Ala. 549, 87 So. 801. The same rule obtains in Iowa and South Carolina. "This method," comments Pomeroy, "is open to the criticism that it renders the title exceedingly unmerchantable for an indefinite period." (Note to Sec. 462).

Applying these principles to the instant case, we find that the court below erred in holding the plea a good defense to the bill. The plea should have been overruled and the defendants required to answer. The marriage status should not be used as a shield to prevent the enforcement of the just obligation of a man who presents no other excuse to justify his non-performance. If in the further proceedings in the case it should develop, as is indicated by the plea, that the complainant, or his assignor, was chargeable with notice or knowledge of the defendant Miller's marital status, at or before the execution of the contract, all that the complainant would then be entitled to secure would be specific performance, by said Miller and his subsequent vendees and grantees, with notice of complainant's rights by conveyance to complainant of such right, title and interest in the land as said Miller himself had, or as he had conveyed to such subsequent vendees taking from him with notice of complainant's rights, without any abatement of the purchase price. Or, if it should develop that the complainant was not chargeable with such notice that Miller was married, he would be entitled to like specific perform-

ance with an abatement from the purchase price of the present worth of the outstanding dower interest.

Reversed for further proceedings pursuant to above opinion.

ELLIS AND STRUM, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.