ORLANDO REALTY BOARD BUILDING CORPORATION, *Appellant,* v. ANNA I. HILPERT, CHARLES R. HILPERT AND MINNIE P. HILPERT, *Appellees.*

Division A.

Opinion Filed May 2, 1927.

1. The enforcement of a specific execution of a contract is not a matter of right in either party but it is a matter of sound discretion in the Court and should be granted only in cases where such decree would be strictly equitable.

2. In a contract for the sale of lands where the conditions to be performed by both parties are to be simultaneously performed, as where the payment of the purchase price is to be made upon delivery of a conveyance, actual payment of the purchase price is not necessary to the vendee's relief. The vendee, however, seeking specific enforcement should allege and prove that he was ready, willing and able to comply with his part of the agreement before or on the date agreed upon for performance, if time is of the essence of the agreement, and that he so notified the vendor.

3. The discretion of the Chancellor in refusing the specific performance of a contract for the sale of lands will not be disturbed on appeal unless it is clearly made to appear that the order was erroneous.

4. Where one holds an option based on a valid consideration to purchase real estate and desires to exercise the option to buy he must definitely accept the proposition by notifying the vendor of such decision within the time specified on the terms named.

5. When an option to buy lands is definitely accepted it ceases to be an option and ripens into a mutually binding and enforceable contract the terms of which are identical with those contained in the option.

6. Where an option is given to purchase a lot of land fifty feet front by one hundred feet in depth beginning at a certain corner "or any fractional part of said fifty feet over and above thirty feet" at a certain price per front foot the option to be exercised on or before a certain date, the vendee in accepting the proposition should designate on or before the date fixed for the expiration of the option the particular part of the land he desires to buy if he intends not to take the entire fifty feet fronting on the street.

7. Where the language of an instrument in writing descriptive of land to be sold is so uncertain that it cannot be said with reasonable certainty that a particular portion or part of the land was intended to be embraced in the description it is too vague to be specifically enforced.

An Appeal from the Circuit Court for Orange County; Frank A. Smith, Judge.

Decree affirmed.

*Dickinson & Dickinson* and *Giles & Gurney,* for Appellant.

*Massey, Warlow & Carpenter,* for Appellees.

ELLIS, C. J.— This is an appeal from a decree canceling an option for the sale of land and refusing the appellant, who was cross-complainant below, the relief of specific performance.

It is well settled that the enforcement of a specific execution of a contract is not a matter of right in either party but that it is a matter of sound discretion in the Court and should be granted only in cases where such decree would be strictly equitable; and that where a party to a contract for the purchase of real estate has in good faith offered to fully perform his part of the contract according to the terms of the agreement, as the same appears on the face thereof, and the vendor fails and refuses to perform those things required of him under the terms of the agreement then the vendee is entitled in equity and good conscience to specific enforcement of the contract. The statement of the rule is not as full as it might be. There is the qualification that when the conditions to be performed by both parties are to be simultaneously performed as where the payment of money, the purchase price or a substantial part of it is to be made upon the delivery of a conveyance or bond for title—actual payment of the puchase price by the vendee is not necessary to his relief. In such case the vendee seeking specific enforcement should allege and prove that he was ready, willing and able to comply with his part of the agreement on or before the date agreed upon for

performance, if time is made of the essence, or within a reasonable time if it is not, and that he so notified the vendor. That is what a tender means in such case. Knox v. Spratt, 23 Fla. 64, 6 South. Rep. 924; Rose v. Henderson, 63 Fla. 564, 59 South. Rep. 138.

It is also true that the discretion of a Chancellor in refusing the specific performance of a contract for the sale of real estate will not be disturbed on appeal unless it is clearly made to appear that the order of the Chancellor is erroneous. Toomer v. Chancey, — Fla. —, 109. South. Rep. 641.

There is also another principle which is involved in this case. It is that where one holds an option, based upon a valid consideration, to purchase real property and desires to exercise his option to buy he must definitely accept the proposition, decide to exercise his option to purchase, by notifying the vendor of such decision within the time specified on the terms named. When that is done with due and proper formality the option becomes merged into a contract for the sale of lands mutually binding and may be enforced in equity if its terms are sufficiently definite as to description of the land and other important requirements. See 25 R. C. L. 236; Rude v. Levy, 43 Colo. 482, 96 Pac. Rep. 560, 127 A. S. R. 123, 24 L. R. A. (N. S.) 91.

When the option is accepted it ceases to be an option and has ripened into a mutually binding and mutually enforceable contract the terms of which are indentical with those contained in the option because the acceptance or exercise of the option to buy must be strictly in conformity with the offer, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing them just as they stand. 25 R. C. L. 237. When, therefore, such a contract is sought to be specifically enforced the question may properly arise whether the description of the land proposed to be sold is sufficiently certain to

enable it to be located.    See Edwards v. Rivers, 35 Fla. 89, 17 South. Rep. 416; Rhode v. Gallat, 70 Fla. 536, 70 South. Rep. 471; Simons v. Tobin, 89 Fla. 321, 104 South Rep. 583.

In the latter case this Court, speaking through Mr. Chief Justice WEST, distinguished between a description of land which is imperfect and does not designate with certainty the land to be conveyed and a description which shows that a particular tract as distinguished from other lands was in the minds of the parties but not perfectly described; in which case parol evidence may be resorted to in order to apply the description or identify or locate the land.

In that case the contract was held to be sufficiently certain in terms and description of property to show that the land was located in Miami, Florida, and the particular property to be the "Esmeralda Hotel Property." Parol evidence was held to be admissible to apply that description to the particular lots or property which the parties had in mind.

The facts in this case are as follows: The complainants claimed to be the owners and seized and possessed in fee simple of a lot in the City of Orlando, known as Lot 4 of Block 29 of R. R. Reid's Addition to Orlando, which is one hundred feet in width on Orange Avenue and extending eastward 178.71 feet. Also another piece of ground adjoining it on the north, described as beginning at the North West corner of Lot 4 of Block 29 of R. R. Reid's Addition to Orlando and running thence North 20 feet thence East 178.71 feet thence South 20 feet to the North East corner of said Lot 4 and thence West along the North line of said Lot 178.71 feet to the place of beginning. The two pieces of property lying contiguous to each other formed an entire estate or property having a frontage of 120 feet on the East side of Orange Avenue and 178.71 feet on the South

side of Washington Street. It was situated at the South East corner of Orange Avenue and Washington Street.

The complainants, Anna, Charles and Minnie Hilpert, executed in writing and delivered to W. W. Rose, Chairman of the Orlando Realtors Building Committee, an option to purchase a part of the property which in the option was described as follows:

"Beginning at the Southeast corner of the intersection of Orange Ave. and Washington Street, in the City of Orlando, run South 50 feet, East 100 feet, North 50 feet, West 100 feet, or any fractional part of said 50 feet over and above 30 feet, at and for a price of ($2,000) two thousand dollars per front foot, to be paid as follows:".

The option was to have been exercised on or before April 2, 1925. On that day Mr. Rose, as Chairman of the Committee, by letter to the Hilperts notified them that he exercised the option to purchase the property accepting the proposition "on the terms and conditions of said option."

On April 18th following the Hilperts wrote Mr. Rose that his attorney had not approved the Hilpert's title to the North 20 feet of the land but as the Hilperts had been advised by their counsel that they did have title they did not propose to try and perfect it and they saw no alternative "but to call the transaction off." On May 4th they wrote Mr. Rose returning his deposit of $5,000.00 which he had made on account and notified him that as they were advised that their title was good they were not disposed to go further with the transaction.

On May 15th the Hilperts wrote Mr. Rose notifying him to perform the contract for the purchase of the property on or before May 27, 1925, or they "would terminate the same."

On May 27th Mr. Rose wrote the Hilperts that he was authorized to notify the Hilperts to prepare a warranty deed for the following described property: "Beginning

at the Northwest corner of Lot 4, Block 29 of R. R. Reid's Addition, run North one (1) inch, East one hundred (100) feet, South thirty (30) feet and one (1) inch, West one hundred (100) feet, North thirty (30) feet to point of beginning.'' And that he was ready to make payment in accordance with the contract when the Hilperts presented properly executed warranty deeds to the property described.

The Hilperts declined to execute the deeds claiming that under the terms of the option Rose was not entitled to receive a deed for the property described.

It will be noted that the description of the particular 30 feet plus selected by Mr. Rose from the 50 feet frontage was not complete in that the last call or line fell one inch short of the point of beginning. It might be considered, however, as sufficient as the description was ''North thirty (30) feet to point of beginning.'' It should have been North thirty (30) feet and one inch to point of beginning.

That particular part of the lot was selected by Mr. Rose sometime after the option had been closed which made the contract to buy the fifty feet or ''any fractional part of said 50 feet over and above 30 feet.''

One of the essential requirements of a contract for the purchase of real estate is that its obligations shall be mutual. In other words, the seller should have the same right to enforce it as the buyer. Now, when the contract was made to buy the lot or ''any fractional part of the said 50 feet over and above 30 feet'', could the Hilperts have designated which particular 30 feet plus they would sell or was that privilege exclusively Mr. Rose's and could he have selected it in alternate ten foot sections? And if the privilege was his should he not have availed himself of it when he accepted the option? Not doing so did he not extend the option beyond the date fixed for its expiration?

In any case, there were no words contained in the option

which could be construed as giving to the purchaser the exclusive right to select the particular 30 feet plus. It is purely assumption to say that Mr. Rose had that exclusive right. The contract was that he should buy the lot or any fractional part of it over 30 feet. Upon what principle or rule of construction can it be said that the words secured to Mr. Rose and not the Hilperts the exclusive right to choose the particular 30 feet plus in case it was decided not to buy the entire fifty foot front?

But aside from that uncertainty there were no words of description of the particular 30 feet plus which should be taken in the event that the whole should not be bought. It is contended that Mr. Rose also had that exclusive right of choice which if true would have authorized him to select it in alternate strips of ten or fifteen feet or less so that he might have ribboned the lot to its almost complete destruction in value.

The contract in this feature was too uncertain to enable a court to say with a reasonable degree of certainty just what was in the minds of the parties. It cannot be said with greater certainty that when the option merged into and became a mutually binding contract that the minds of the parties met upon the proposition that if Mr. Rose should decline to buy the entire 50 foot front on Orange Avenue he might designate which particular part of the lot he would take over 30 feet than that the Hilperts should have the right to designate which 30 feet plus he should take.

Nor can it be said with that certainty which is essential to the validity of such an agreement that if Mr. Rose had the exclusive privilege of selecting the particular 30 feet that he might not select it from either the North or South side of the lot or from between the two points, leaving only ten feet upon each side in the Hilperts, or that he might not even select it in alternate strips or that he might not have decided to take 45 or 48 feet from the South end

and leave only a narrow strip of 2 feet of the lot on the North side.

Neither can it be said with any degree of certainty that considering the description of the property as contained in the option that it was not in the minds of the parties that in the event a part of the lot should be taken that it should be on the North side "beginning at the Southeast corner of the intersection of Orange Avenue and Washington Street."

The decree of the Chancellor should therefore be affirmed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.

BROWN, J. (Concurring)—In addition to the cogent reasoning of the Chief Justice in the foregoing opinion, it appears to me that if it should be conceded for the sake of argument that the option gave Mr. Rose the exclusive right to select either the full 50 feet or any part thereof over 30 ft., he must necessarily have indicated such selection at the time he attempted to accept or exercise the option. This he did not do. Hence the option was never clearly and definitely accepted within the time limited and no contract resulted.